UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                                          Chapter 11

ENDI PLAZA LLC,                                                               Case No. 25-20002 (SHL)

                              Debtor.
---------------------------------------------------------------x

# ORDER GRANTING STAY PENDING APPEAL
## SUBJECT TO OBTAINING A BOND

**A P P E A R A N C E S:**

**VOGEL LAW FIRM**
*Proposed Counsel to the Debtor and Debtor-in-Possession*
218 NP Avenue,
Fargo, North Dakota 58102
By:     Drew Hushka, Esq.

**STINSON LLP**
*Counsel for Fannie Mae*
140 Broadway Suite 2330
New York, NY 10005
By:     Zachary Hemenway, Esq.

**WILLIAM K. HARRINGTON**
*United States Trustee*
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Suite 515
New York, New York 10004
By:     Andrea Schwartz, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the *Motion for Stay Pending Appeal* [ECF No. 56] (the "Motion")

filed by Endi Plaza, LLC ("Endi" or the "Debtor").  The Motion requests that the Court stay

dismissal of the instant case.  Fannie Mae, a creditor of Endi filed an objection to the Motion.

*Fannie Mae's Objection to the Debtor's Motion for Stay of Order of Dismissal Pending Appeal*

[ECF No. 62] (the "Objection").  Endi filed a reply to the Objection.  *Endi Plaza LLC's Reply Memorandum of Law in Support of Motion for Stay Pending Appeal* [ECF No. 65] (the "Reply").  For the reasons set forth below, the Motion is granted pending posting of a bond.

## DISCUSSION

Familiarity with this case is assumed and the Court incorporates by reference the facts as stated in this Court's August 6, 2025 Bench Ruling.  *See* Hr'g Tr. (August 6, 2025) [ECF No. 52] at 4:15-11:25.  On October 21, 2025, a notice of appeal was filed, and this Motion followed.  Under Rule 8007 of the Federal Rules of Bankruptcy Procedure, a "party must move first in the bankruptcy court" for "a stay of the bankruptcy court's judgment, order, or decree pending appeal," or "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."  Fed. R. Bankr. P. 8007(a)(1)(A), (C).  The Court considers four factors in determining whether to grant a motion to stay an order pending appeal: "1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

A court's determination of whether to grant a stay pending appeal is "an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case."  *Id.* at 433 (internal citations and quotations omitted).  "The movant's burden is a heavy one[,]" with the movant required to "show satisfactory evidence on all four criteria."  *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (internal citations and quotations omitted).  "Failure to satisfy one prong of this standard for granting a stay will doom

2

the motion." *Turner v. Citizens Nat'l Bank of Hammond* (*In re Turner*), 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997).

The Second Circuit has "treated these [four factors] somewhat like a sliding scale, citing approvingly other circuits' formulation that . . . more of one [factor] excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (internal citations and quotations omitted). Courts have also held that two of the factors—irreparable injury to the movant and likelihood of success on appeal—are the "most critical." *In re Eletson Holdings Inc.*, 2025 WL 726248, at *8 (Bankr. S.D.N.Y. Mar. 6, 2025) (citing *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 U.S. Dist. LEXIS 113309, at *3 (S.D.N.Y. Aug. 26, 2015)); *see also Nken*, 556 U.S. at 434.

### A. Chance of Success on the Merits

In considering whether to grant a stay pending appeal, the Court must consider "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be better than negligible . . . [m]ore than a mere possibility of relief is required." *Id.* at 434-35 (internal citations and quotations omitted). "It is well-established in this circuit that a party seeking a stay may satisfy the first factor—'likelihood of success'—by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips decidedly in its favor." *Starke v. SquareTrade, Inc.*, 2017 U.S. Dist. LEXIS 227981, at *2-3 (Bankr. E.D.N.Y. Dec. 14, 2017).

The Debtor contends that its due process rights were violated by the Court's dismissal of the case and the imposition of a 12-month bankruptcy filing bar based on alleged bad faith. *See* Motion at 4. To support this contention, Endi argues that "the parties never briefed the issue [of

bad faith], and Endi Plaza was never afforded the opportunity to present evidence rebutting the alleged bad faith at an evidentiary hearing." *Id.* On the one hand, the Debtor is correct that bad faith was not set forth as the basis for dismissal in Fannie Mae's motion. On the other hand, bad faith can be raised by a bankruptcy court *sua sponte* as an issue and the question of bad faith was discussed over the course of two hearings on Fannie Mae's motion. S*ee In re HBA East, Inc.*, 87 B.R. 248, 263 n.30 (Bankr. E.D.N.Y. 1988) ("In any event, the bankruptcy court has the power to raise the issue of good faith, *sua sponte*, to prevent misuse of its jurisdiction and miscarriage of its processes[]") (citing 11 U.S.C. § 105(a)); *see also C-TC 9th Ave. Pshp. v. Norton Co.* (*In re C-TC 9th Ave. Pshp.*), 113 F.3d 1304, 1313 (2d Cir. 1997) ("[T]he bankruptcy court's election to decide the bad faith issue without a formal evidentiary hearing was within its discretion; the record provided *ample evidence* on which the court could make such a decision.") (emphasis added); s*ee also* Hr'g Tr. August 6, 2025 [ECF No. 58] ("…the concern is if somebody's bad faith filing is whether somebody's really misusing the bankruptcy process."); Hr'g Tr. September 18, 2025 [ECF No. 52] (the "Bench Decision"). On balance, the Court agrees that there is some basis to argue whether a sufficiently fact-intensive examination of the record was undertaken to justify dismissal and the filing bar.

    B.  **<u>Irreparable Harm</u>**

A showing of irreparable harm is the "principal prerequisite" for the issuance of a stay pending appeal. *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016). The harm "must be neither remote nor speculative, but actual and imminent." *ACC Bondholder Grp. v. Adelphia Communs. Corp.* (*In re Adelphia Communs. Corp.*), 361 B.R. 337, 347 (S.D.N.Y. 2007) (internal citations and quotations omitted). Endi contends that it faces actual, imminent

harm if this Court does not stay this matter pending appeal because Endi will be faced with foreclosure and receivership. *See* Motion at 5.

Fannie Mae is correct that the mere sale of the Debtor's property is remedial in nature and therefore does not, *per se*, constitute irreparable harm. *See, e.g.*, *In re Mott*, Case No. 25-10110 (SHL), 2025 WL 2348890, at *4 (Bankr. S.D.N.Y. Aug. 13, 2025) ("[A]ny potential monetary harm that may result from the denial of a stay, such as eviction from or sale of a debtor's property, are remediable and do not automatically constitute irreparable harm."). But an injury will not constitute irreparable harm only where "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation" exists. *Id.* at *13. Here, dismissal of the case would trigger a transfer of the property to a receiver pursuant to a statute receivership order. In that circumstance, the Debtors would lose control over the property even before consummation of any foreclosure proceeding—an outcome that demonstrates actual, imminent, and irreparable harm. *See Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 367 (S.D.N.Y. 2000) (citing *Southland Corp. v. Forelich*, 41 F. Supp. 2d 227 242 (E.D.N.Y. 1999) (finding that irreparable harm flows from an inability to make productive use of and exercise control over property)).

**C. Substantial Injury to Others If a Stay is Issued**

The third factor requires the movant seeking a stay pending appeal to establish that the "issuance of the stay will [not] substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *Adelphia*, 361 B.R. at 349.

The Debtor contends that Fannie Mae would not be harmed if the stay was granted because Endi Plaza's asset is producing rent of approximately $370,000.00 per month. *See*

5

Motion at 5–6.  Endi also claims that if a stay is entered pending appeal, Endi will make payments that "may later be applied towards Fannie Mae's loan." *Id.*  Finally, Endi states that "Fannie Mae's claim is secured with Endi Plaza's sole asset, and the collateral value has remained intact[,]" leaving Fannie Mae's secured position unimpaired if a stay is entered pending appeal. *Id.*

Fannie Mae enumerates two arguments in its Objection.  *See* Objection at 9–10.  First, Fannie Mae would suffer substantial harm due to the continued accrual of interest, lack of payments, and an inability to enforce its rights to foreclose on the property. *Id.*  Fannie Mae's concern is understandable.  Over $55,700,000.00 in indebtedness is outstanding, with interest accruing at 0.03% per day, yielding a nominal value of over $15,000.00 per day.  Second, Fannie Mae argues that a stay would place control of the property in the hands of the party "who committed the fraud and misuse of assets that prompted dismissal and the professionals who were unable to prevent those actions." *Id.*  Fannie Mae refers to the Debtor's concessions in sworn affidavits on the record, disclosing that funds were inappropriately disbursed post-petition to various insiders and affiliates, including $44,881.00 of "[i]nsider transfers" and $179,000.00 to various unsecured creditors in July 2025.  Moreover, out of the monthly rent totals of "approximately $379,000," only $586,187.41 was held in the Debtor's DIP account after two monthly rent cycles. *Id.* (citing Declaration of David Goldwasser in Connection with the Status Hearing Held on August 27, 2025 [ECF No. 45]).

Ultimately, the Court concludes that Fannie Mae's concerns as to harm are well founded.  A stay substantially harms a creditor where accruing interest and other costs "may not be recoverable based on the value of the collateral." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014).  While Fannie Mae's secured position in Endi Plaza's asset, together

6

with the asset's monthly rental income of approximately $370,000.000, arguably provides some protection to Fannie Mae, the facts here suggest that the protection is somewhat illusory. So while the Debtor promises to make payments to Fannie Mae, the Debtor offers no convincing explanation as to why it made no payments to Fannie Mae on the outstanding loan since June 2024. *See* Bench Decision at 6 ("In fact, the debtor did default on the agreement by failing to remit payments to Fannie Mae from June 1st, 2024, and thereafter"). Perhaps more significantly, the Debtor fails to account for the significant discrepancy between the approximately $740,000.00 in rent collected over two cycles (at $370,000.00 per cycle) and the $586,187.41 held in the DIP account at the time of the Objection's filing. *See* Objection at 9–10. Thus, the Debtor's assurances about its use of the rents going forward are undermined by the Debtor's past failure to secure those funds, even though the rents are assigned to Fannie Mae. *See* Bench Decision at 4-6.

### D. Public Interest

The movant must also demonstrate that the public interest will not be adversely affected if a stay is granted during the pendency of the appeal. *See Nken*, 556 U.S. at 434. "This factor of the test balances the goals of efficient case administration and the right to meaningful review on appeal." *Golden v. Nat'l Collegiate Student Loan Trust 2006-4* (*In re Golden*), 2025 Bankr. LEXIS 1629, at *30 (Bankr. E.D.N.Y. July 7, 2025) (citing *Adelphia*, 361 B.R. at 349). Specifically, [t]he public interest factors the expedient administration of the bankruptcy proceedings." *Adelphia*, 361 B.R. at 349. And "where the high standards for a stay . . . are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest." *In re 473 West End Realty*, 507 B.R. at 508. The Court finds this factor somewhat neutral, with Debtor's

7

interest in a reorganization being slightly outweighed by its clear failure to comply with the requirements of the Bankruptcy Cide during these two cases. *See* Bench Decision at 23 ("Property of the estate should have been returned immediately as property of the estate…consistent with the Bankruptcy Code").

### E. Stay Pending Appeal Conditioned on Bond

Given the Court's review of the factors above, the question of a stay is a close one. But ultimately, the Court concludes a stay should be granted if it is secured by a bond. The purpose of a bond pursuant FED. R. BANKR. P. 8007 "is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse the holding of the bankruptcy court." *In re Motors Liquidating Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015). Put differently, a bond serves as a safeguard to ensure that the prevailing party at the trial level is protected against the financial consequences of delay or reversal efforts that ultimately prove unsuccessful. *Id.* Thus, if a stay is likely to endanger the non-moving party's interest in recovery and there is no good reason not to require posting of a bond, then the court "should set a bond at or near the full amount of the potential harm to the non-moving party." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351 (S.D.N.Y. 2007) (ordering a bond equivalent to the accruing interest on the debtor's indebtedness during an estimated seven-month appeal process).

Given the lack of clarity regarding the location of funds collected from rents, as well as concerns raised by the disbursements to insiders and unsecured creditors, *see* Bench Decision at 6, the Court finds that Fannie Mae's request for a bond is reasonable and appropriate. It seeks a bond of no less than $3,300,000.00—calculated by applying interest accruing at 0.03% per day over an expected seven-month appeal period as explained by Fannie Mae at the hearing on this Motion. That amount is justified under the law and appropriate given the facts and

8

circumstances of this case, and Movant has not provided any satisfactory explanation as to why such a bond should not be required here. *See In re 473 West End Realty Corp.*, 507 B.R. at 501–02 ("If a movant seeks a stay pending appeal 'without a bond,' the movant 'has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'").

## CONCLUSION

For all the reasons discussed above, the Debtor's Motion requesting a stay pending appeal is granted, subject to the bond requirement set forth in this Order. A stay will extend for a period of seven days from the docketing of this Order subject to the Debtor filing a Notice on the docket that it has obtained the required bond; if no such notice is filed on the docket within seven days, the stay shall dissolve and no longer be in effect.[1]

**IT IS SO ORDERED.**

Dated: White Plains, New York
January 23, 2026

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE

---

[1] The Court apologizes to the parties for the delay in issuing a decision on this Motion, with the delay reflecting an extraordinary busy docket at the end of 2025. The Court appreciates the patience of the parties.